IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

NORTHERN DIVISION


DEBORAH BILBREW                                                    PLAINTIFF


V.                                          NO. 3:17-CV-346-DCB-LRA


MISSISSIPPI BOARD OF NURSING and

DR. LYNN LANGLEY                                                  DEFENDANTS

## ORDER AND OPINION

The Mississippi Board of Nursing (the "Board") and Dr. Lynn Langley move the Court for summary judgment dismissing the employment-discrimination claims of Plaintiff Deborah Bilbrew, the Board's former Director of Licensure and Practice. For the reasons that follow, the motion is GRANTED.

## I.  Background

Primarily at issue is the reason the Board fired Bilbrew after just nine months on the job. Bilbrew attributes her firing to racial discrimination; the Board points to her poor performance.

In October 2015, the Board hired Bilbrew to fill its "Director of Licensure and Practice" position. Her salary was $60,200 per year. Before she accepted the job, Bilbrew discussed her salary

with Dr. Langley, the Board's Executive Director at the time. Bilbrew said salary was not important: She was "retired and glad to be employed, and that was it."

A month after she took the job, Bilbrew learned that her white predecessor, Kathy Elliott, earned about $15,000 more per year than she did. Elliott was paid more than Bilbrew because Elliott negotiated with the Board for a higher starting salary; Bilbrew did not. The Mississippi State Personnel Board also granted the Board permission to pay Elliott more than the $60,200 "start step" salary for the position. The Board did not request permission to pay Bilbrew more than the "start step" for the position because Bilbrew did not ask for a higher salary when she interviewed for the job. Bilbrew eventually asked Dr. Langley why Elliott drew a higher salary, but did not receive an answer that satisfied her.

Bilbrew sometimes ate lunch with Hoshina Jones. Jones worked for the Board as an "investigator," and filed an EEOC complaint against the Board in March 2016, alleging sex discrimination. Bilbrew says that Dr. Langley called Jones a "troublemaker" and told Bilbrew to "be careful of who you're associating with."

In April 2016, about six months after Bilbrew was hired, Bilbrew's subordinates began complaining to Dr. Langley about Bilbrew's "management style." Three employees complained that

Bilbrew wrongly denied leave requests or improperly shared their personal information. None of the complaints were written down.

In a June 2016 email, Dr. Langley told Bilbrew that employees had complained about her. In particular, the employees "express[ed] concern over the lack of flexibility with their time and duties." Bilbrew replied that she had never denied leave to anyone and intended only to avoid "discrimination based on favoritism or race."

Less than one month later, the Board fired Bilbrew and reassigned two employees, Phyllis Johnson and Emily Spruill, to perform her duties. Johnson and Spruill shared Bilbrew's former duties until August 2017, when the Board hired a white woman, Tina Highfill, as "Director of Advanced Practice and Licensure." The parties dispute whether Highfill replaced Bilbrew.

Bilbrew sued. She alleges the Board fired her because she is African-American and retaliated against her because she sometimes ate lunch with Jones.[1] The Board and Dr. Langley move for summary judgment on all of Bilbrew's claims.

---

[1] Bilbrew now argues —— but failed to allege in her complaint —— that she was fired in retaliation for complaining to Dr. Langley about being paid less than a white predecessor. The Court is not required to consider this claim because it was improperly raised in a summary-judgment response. See Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990).

## II. Racial Discrimination

Title VII of the Civil Rights Act of 1964 prohibits racial discrimination in employment. 42 U.S.C. § 2000e-2(a). It outlaws both intentional discrimination and unintentional discrimination that disproportionately adversely affects minorities. Ricci v. DeStefano, 557 U.S. 557, 577 (2009). The former form of discrimination is called disparate treatment, the latter, disparate effect. Id. at 577. This is a disparate treatment case.

Bilbrew relies on circumstantial evidence to prove discrimination, so the Court uses the McDonnell Douglass burden-shifting analysis. Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 426 (5th Cir. 2017). That analysis places the initial burden on Bilbrew to prove four things: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she was discharged or suffered some adverse employment action; and (4) she was replaced by someone outside her protected group or treated less favorably than other similarly situated employees. Morris v. Town of Independence, 827 F.3d 396, 400 (5th Cir. 2016).

The parties agree that Bilbrew has met the first three requirements of her prima facie case; solely at issue is the fourth: Whether Bilbrew was replaced by someone outside her protected group.

## A. Replacement

Defendants contend Bilbrew cannot show that she was replaced because the Board reassigned her duties to two existing employees, Phyllis Johnson (African-American) and Emily Spruill (white). Bilbrew replies that she was replaced by Tina Highfill, a white woman the Board hired over a year after it fired Bilbrew.

In this area, the Fifth Circuit has produced few precedential opinions. But three unpublished opinions explore Title VII reassignment.[2] See Griffin v. Kennard Ind. Sch. Dist., 567 F. App'x 293 (5th Cir. May 13, 2014) (per curiam); Rexses v. Goodyear Tire & Rubber Co., 401 F. App'x 866 (5th Cir. Nov. 10, 2010) (per curiam); Dulin v. Dover Elevator Co., 139 F.3d 898, 1998 WL 127729 (5th Cir. Mar. 2, 1998).[3]

In Dulin, a construction superintendent sued his employer for age discrimination. 1998 WL 127729, at *1. The district court granted summary judgment to the employer, ruling that the

---

[2] In another unpublished opinion, a different Fifth Circuit panel ruled that a plaintiff can show that she was "replaced" if she proves that her specific position was eliminated and her duties were assumed by someone outside of her protected class. See Howard v. United Parcel Service, Inc., 447 F. App'x 626, 629, 2011 WL 5138719, at *3 n.2 (5th Cir. Oct. 21, 2011) (per curiam).

[3] The parties quibble over the import of Wong v. Lighthouse Point, LLC, No. 4:16-CV-109-DMB-JMV, 2017 WL 6028356, at *7 (N.D. Miss. Dec. 5, 2017), an opinion granting summary judgment to an employer and dismissing the employee's Title VII racial-discrimination claims. Even if the Court found the reasoning of that case persuasive, it has limited application here. In Wong, unlike here, the plaintiff showed that, by reassigning two employees to the plaintiff's position, the employer "substantially changed" the nature of the reassigned employees' responsibilities.

superintendent could not show that he was replaced by someone outside his protected class. Id. at *2. The Fifth Circuit affirmed. Id. at *3. In so doing, it reasoned that the superintendent had not been replaced because his position was eliminated and his duties "were taken up by two existing employees." Id. at *2.

Rexses, like Dulin, is an age-discrimination case. 401 F. App'x 866. In Rexses, a Fifth Circuit panel ruled that a former Goodyear employee was not "replaced" when Goodyear eliminated his position and assigned his former duties to two existing employees. Id. at 868.

The Griffin court explained reassignment in broader terms. According to it, an employee is reassigned — not replaced — "when his former duties are distributed among other co-workers." Id. at 294-95. Position elimination is not mentioned. Id. Thus, Griffin suggests that an employee is not replaced when his duties are reassigned to existing employees, even though his former position has not been eliminated.[4]

Applying Griffin here, Bilbrew cannot show that she was replaced by someone outside her protected class. Defendants have

---

[4] District courts have struggled to interpret and apply Griffin. See, e.g., Bogan v. MTD Consumer Grp., Inc., 2016 WL 3671696, at *3 (N.D. Miss. July 1, 2016) (suggesting that Griffin's reassignment principle only applies to reduction-in-workforce cases); Harkness v. Bauhaus U.S.A., Inc., 86 F. Supp. 3d 544, 557 (N.D. Miss. 2015) (citing Griffin yet "assuming, without deciding," that an age-discrimination plaintiff whose duties were assigned to two younger co-workers had been replaced).

come forward with admissible evidence showing that Bilbrew's duties were reassigned to the Board's existing employees, Phyllis Johnson, an African-American woman, and Emily Spruill, a white woman. Bilbrew's rejoinder, that she was "ultimately" replaced by Tina Highfill, fails to persuade.

A Title VII plaintiff fails to create a material fact issue on the replacement element of her prima facie case when she points only to an "ultimate" replacement outside her protected class. See Kirschling v. Atlantic City Bd. Of Educ., 10 F. Supp. 3d 587, 597 (D. N.J. 2014). In Kirschling, for example, the district court determined that the plaintiff failed to create a material fact issue regarding the replacement element of his claim when he was initially replaced by someone of his race. Id at 597. That the plaintiff's "ultimate" replacement, hired more than one year after the plaintiff was fired, was of another race failed to create an inference of discrimination. Id. So too here. The Board hired Highfill more than one year after it fired Bilbrew. Given the passage of time between its firing and hiring decisions, no inference of discrimination can be drawn.

Bilbrew fails to create a material fact issue regarding her replacement by someone outside her protected class, so Defendants are entitled to summary judgment on her racial-discrimination claim. Even if Bilbrew could show the replacement element of her

prima facie racial-discrimination case, the Court would grant summary judgment against her because the Board offers legitimate, non-discriminatory reasons for firing Bilbrew.

## B. Legitimate, Non-Discriminatory Reasons

Had Bilbrew proved her prima facie case of racial discrimination, the burden would shift to the Board to articulate a legitimate, non-discriminatory reason for firing her. Outley v. Luke & Associates, Inc., 840 F.3d 212, 218 (5th Cir. 2016). The Board's reasons must be "clear and specific." Id.

The Board offers two reasons for firing Bilbrew.[5] The first reason is Bilbrew's poor management style. In particular, the Board says that Bilbrew's subordinates complained that she improperly denied them leave and shared their personal information. The second reason is Bilbrew's refusal to participate in the "just culture" work environment that Dr. Langley tried to create. The Board says that Bilbrew's demeanor was poor and, at times, even "hostile." These reasons are clear, specific, legitimate, non-discriminatory, and supported by admissible evidence in the form of the affidavits of Dr. Langley and Shan Montgomery.[6]

---

[5] Bilbrew says that after Dr. Langley fired her, Dr. Langley told Board employees to record complaints against her. Bilbrew cites no record evidence to support the assertion.

[6] Montgomery is the Board's Director of Finance and Operations. She manages human resources.

Bilbrew rejoins that the Board's reasons are a pretext for racial discrimination. She may prove pretext by showing that the Board's reasons are "false or unworthy of credence." Thomas v. Johnson, 788 F.3d 177, 179 (5th Cir. 2015) (internal citation and quotation marks omitted). Bilbrew invokes Patrick v. Ridge[7] and argues that the Board's reasons resemble the vague reasons the Fifth Circuit rejected in that case.

In Patrick, an employee sued her former employer, alleging she was not promoted due to age discrimination. 394 F.3d at 313. The district court granted summary judgment to the former employer, finding that it had offered legitimate, non-discriminatory reasons for declining to promote the plaintiff. Id. at 313. The reason advanced by the former employer, and accepted by the district court, was that the plaintiff was not "sufficiently suited" for the position she sought. Id. The former employer did not explain what that meant or why the plaintiff was not "suited" for the position. Id. at 316. The Fifth Circuit reversed. Id. at 320.

First, the Patrick panel rejected the former employer's proffered explanation as pretextual. Id. at 317. The employer, the court advised, "must articulate in some detail a more specific reason than its own vague and conclusional [*sic*] feeling about the employee." Id.

---

[7] 394 F.3d 311 (5th Cir. 2004).

Second, the court suggested that the employer would have met its burden of offering a legitimate, non-discriminatory reason if it had explained why the employee was not "sufficiently suited," such as "her experience, credentials, attitude, or some other articulable characteristic." Id. The problem with the former employer's explanation, the court explained, was that "[t]he employer might have found the candidate 'not sufficiently suited' because of a protected trait." Id.

Patrick is an important opinion on pretext, but it has limited application here. The reasons that the Board offers in support of firing Bilbrew are more specific than the reasons the Fifth Circuit rejected in Patrick. The Board offers evidence showing that Bilbrew was a poor "fit," not because she is African-American, but because she was a poor manager: Her demeanor was substandard, her subordinates complained about her management style, and she improperly denied leave to employees and shared their personal information.

Defendants have shown the absence of a material factual dispute as to Bilbrew's racial-discrimination claim. Viewing facts and drawing inferences in her favor, the Court concludes that Bilbrew cannot show (1) that she was replaced by someone outside her protected class, and (2) that the legitimate, non-discriminatory reasons the Board advances for firing her are

pretext for racial discrimination. The Court therefore GRANTS Defendants' motion as to Bilbrew's Title VII racial-discrimination claim and DISMISSES the claim WITH PREJUDICE.

## III. Retaliation

Title VII prohibits an employer from taking an adverse employment action against an employee because she has opposed a practice made unlawful by Title VII, or because she has made a charge, testified, assisted, or participated in any Title VII proceeding. 42 U.S.C. § 2000e-3(a).

Bilbrew says she was fired in retaliation for complaining to Dr. Langley about being paid less than her white predecessor, Kathy Elliott.[8] Defendants insist that Bilbrew was fired because she was a poor performer.

### A. Prima Facie Case

To establish a prima facie case of retaliation, Bilbrew must show: (1) she engaged in activity protected by Title VII, (2) the Board took adverse employment action against her, and (3) a causal connection between the protected activity and the adverse employment action. Fisher v. Lufkin Indus., Inc., 847 F.3d 752,

---

[8] Bilbrew appears to have abandoned her original theory. She originally contended that the Board fired her in retaliation for associating with another employee who filed an EEOC complaint against the Board.

757 (5th Cir. 2017). Only the causal-connection element is disputed.

### 1. Causal Connection

To prove the causal-connection component of her prima facie case, Bilbrew relies on the three-month gap between the date she was fired and the date she complained to Dr. Langley about being paid less than her white predecessor. The temporal proximity alone, Bilbrew submits, shows a causal connection sufficient to satisfy the third element of her prima facie case.

When a plaintiff relies only on the period of time between the protected activity and the adverse employment action to show a causal connection, as Bilbrew does here, the "temporal proximity must be very close." Barkley v. Singing River Elec. Power Ass'n, 433 F. App'x 254, 260 (5th Cir. 2011) (unpublished). Fifth Circuit opinions —— most unpublished —— draw an arbitrary line at four to five months; a greater gap will not by itself show a causal connection. See, e.g., Flanner v. Chase Inv. Services Corp., 600 F. App'x 914, 921 (5th Cir. 2015) (per curiam) (unpublished) (four month gap insufficient); Barkley, 433 F. Appx at 260 (same); Ajao v. Bed Bath and Beyond, Inc., 265 F. App'x 258, 276 (5th Cir. 2008) (per curiam) (unpublished) (same); Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471-72 (5th Cir. 2002) (five month gap insufficient); Everett v. Cent. Miss., Inc. Head Start Program,

444 F. App'x 38, 47 (5th Cir. 2011) (per curiam) (unpublished) (same).

The temporal proximity here is three months and so "very close." Viewing the facts and drawing all reasonable inferences in Bilbrew's favor, the three-month gap between Bilbrew's complaint to Dr. Langley and her firing suffices to show the casual-connection component of Bilbrew's prima facie case.

## B. Legitimate, Non-Retaliatory Reasons

Bilbrew has made a prima facie case of retaliation, so the burden shifts back to the Board to show a legitimate, non-retaliatory reason for firing her. Pineda v. United Parcel Service, Inc., 360 F.3d 483, 487 (5th Cir. 2004). That burden is one of production, not persuasion; it "involves no credibility assessment." McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007).

The Board meets its burden on this point. It offers an array of non-retaliatory reasons for firing Bilbrew, including her ineffective management style, poor demeanor, inappropriate denial of leave requests, and improper sharing of employees' personal information.

## C. Pretext and But-For Causation

Because the Board offers legitimate, non-retaliatory reasons for firing Bilbrew, she must now show that the reasons are pretextual to avoid summary judgment. McCoy, 492 F.3d at 557. In other words, Bilbrew must produce sufficient summary-judgment evidence showing that but for her complaints to Dr. Langley about being paid less than white predecessor, she would not have been fired. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). She fails to do so.

The only evidence linking Bilbrew's complaints to her firing is the three-month gap between the events. Although the temporal proximity is sufficient, standing alone, to establish the third element of Bilbrew's prima facie retaliation case, it is not sufficient to show but-for causation. Strong v. University Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007). Summary judgment is warranted.

Defendants have shown the absence of a material factual dispute as to Bilbrew's retaliation claim. Viewing facts and drawing inferences in her favor, the Court concludes that Bilbrew cannot prove the but-for prong of her retaliation claim. The Court therefore GRANTS Defendants' motion as to Bilbrew's retaliation claim and DISMISSES the claim WITH PREJUDICE.

## IV. Discrimination in Compensation

Bilbrew alleges that the Board paid her less than her white predecessor because she is African-American. Defendants contend that Bilbrew failed to exhaust any pay-discrimination claim. And even if she had exhausted such a claim, Defendants continue, it would fail because Bilbrew's predecessor negotiated her salary and Bilbrew did not.

### A. Exhaustion

An employee cannot sue for employment discrimination she did not assert in an EEOC charge. Filer v. Donley, 690 F.3d 643, 647 (5th Cir. 2012) (citation omitted). That is because "Title VII requires employees to exhaust their administrative remedies" before filing a lawsuit. McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273 (5th Cir. 2008).

To decide if Bilbrew exhausted her Title VII wage-discrimination claim, the Court construes the EEOC charge in its broadest reasonable sense and asks whether her wage-discrimination claim "can reasonably be expected to grow out of the charge of discrimination." Davenport v. Edward D. Jones & Co., 891 F.3d 162 (5th Cir. 2018).

In her EEOC charge, Bilbrew states that "she made several inquiries regarding the salary disparity between my position and

my white predecessor, Kathy Elliott." Construing that language in its "broadest possible sense," the Court concludes that Bilbrew's wage-discrimination claim could reasonably be expected to grow out her EEOC charge. Defendants' exhaustion argument is without merit, so the Court addresses whether Bilbrew offers sufficient evidence on the claim to survive summary judgment.

### B. **Prima Facie** Case

To establish a prima facie case of Title VII discrimination in compensation, Bilbrew must show that she was a member of a protected class and that she was paid less than a non-member of the protected class for work requiring substantially the same responsibility. Taylor v. United Parcel Service, Inc., 554 F.3d 510, 522 (5th Cir. 2008) (citing Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984)).

Bilbrew has established a prima facie case. She has shown that she is African-American and that she was paid less than her white predecessor, Kathy Elliott, for performing the same duties as the Board's Director of Licensure and Practice. Defendants do not dispute either point. So the burden shifts to the Board to provide a legitimate, non-discriminatory reason for paying Bilbrew less than Elliott for the same job.

### C. Legitimate, Non-Discriminatory Reasons

The Board offers two reasons for paying Bilbrew less than Elliott. First, Elliott negotiated her salary and Bilbrew did not. It is undisputed that Bilbrew told Dr. Langley or Shan Montgomery that salary was not important to her. And second, the Board received permission from the Mississippi State Personnel Board to start Elliott at a higher salary than the "start step" for the position. Because both reasons are legitimate and non-discriminatory, Bilbrew must show that they are pretextual to avoid summary judgment.

### D. Pretext

Bilbrew cites no record evidence that shows that the Board's reasons for paying Elliott more than Bilbrew are pretextual. She instead advances two contradictory arguments. On the one hand, she insists she was "misled" into believing that the Board's "start step" salary was non-negotiable; on the other, she argues that Dr. Langley "refused" to negotiate with Bilbrew.[9] Neither argument is supported by any evidence. See FED. R. CIV. P. 56(c)(1) (a party asserting that a fact is disputed must support the assertion with a citation to materials in the record).

---

[9] No record evidence supports either assertion.

Merits aside, Bilbrew's discrimination-in-compensation claim is not properly before the Court. Bilbrew did not plead the claim in her complaint. It was only in response to Defendants' motion for summary judgment that Bilbrew indicated that she was pursuing an independent discrimination-in-compensation claim. Claims are to be pleaded in the complaint, not in a summary-judgment response. Cutrera v. Bd. Of Sup'rs of Louisiana State University, 429 F.3d 108, 113 (5th Cir. 2005) (citing Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990)).

Defendants have shown the absence of a material factual dispute as to Bilbrew's discrimination-in-compensation claim. Viewing facts and drawing inferences in Bilbrew's favor, the Court concludes that Bilbrew cannot show that the Board's legitimate, non-discriminatory reasons for paying her less than Elliott are pretextual. The Court therefore GRANTS Defendants' motion as to Bilbrew's discrimination-in-compensation claim and DISMISSES the claim WITH PREJUDICE.

## V. Civil Rights Claims

Bilbrew's complaint cites two civil rights statutes, 42 U.S.C. §§ 1981 and 1983. The former guarantees equal rights under the law to all persons within the jurisdiction of the United States, and the latter creates a claim for deprivation of

federally-protected rights by a person acting under color of state law.

The same analysis that applied to Bilbrew's Title VII racial-discrimination claims applies to her § 1981 and § 1983 claims. Body by Cook, Inc. v. State Farm Mut. Auto. Ins., 869 F.3d 381, 386 (5th Cir. 2017) (§ 1981); Lauderdale v. Texas Dep't of Criminal Justice, 512 F.3d 157, 166 (5th Cir. 2007) (§ 1983). Because the Court has concluded that Defendants are entitled to summary judgment on all Bilbrew's Title VII racial-discrimination claims, Defendants are entitled to summary judgment on Bilbrew's § 1981 and § 1983 claims. The Court therefore GRANTS Defendants' motion as to Bilbrew's § 1981 and § 1983 claims and DISMISSES the claims WITH PREJUDICE.

## VI. Claims Against Dr. Langley, Individually

Bilbrew sued Dr. Langley in her personal capacity, but failed to distinguish the claims she alleged against Dr. Langley from those she alleged against the Board.

To the extent Bilbrew attempts to advance Title VII claims against Dr. Langley, the claims fail as a matter of law. Title VII "does not provide for liability against individual employees who do not otherwise qualify as employers." Grant v. Lone Star Co., 21 F.3d 649, 650 (5th Cir. 1994). To qualify as a Title VII "employer," a person must have fifteen or more employees. 42 U.S.C.

§ 2000e(b). The record confirms that Dr. Langley does not have fifteen or more employees, so she cannot qualify as a Title VII "employer."

To the extent Bilbrew attempts to advance § 1983 or § 1981 claims[10] against Dr. Langley, those claims also fail.[11] The only possible basis for the claims is the same alleged discrimination and retaliation that formed the basis of Bilbrew's Title VII claims, and the Court has already determined that those claims cannot survive summary judgment.

## VII. Conclusion

As to each of Bilbrew's claims, Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.

---

[10] Bilbrew's opposition papers do not address the viability of her § 1983 claims. Any argument on the issue is therefore waived. See Rivera v. Interface Sec. Sys., LLC, No. 10-4157, 2011 WL 3665156, at *1 (E.D. La. Aug. 22, 2011).

[11] Bilbrew's summary-judgment response focuses on the pleading standard that applies to § 1981 claims and fails to identify any record evidence that supports her § 1981 claim.

Accordingly,

IT IS ORDERED that the Mississippi Board of Nursing and Dr. Lynn Langley's motion for summary judgment **[Doc. 24]** is GRANTED, and Deborah Bilbrew's claims are DISMISSED WITH PREJUDICE.

A Final Judgment shall issue this day in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED, this the 12th day of July, 2018.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE